**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.M. and I.M.**

**No. 23-21** (Wood County 21-JA-233 and 21-JA-234)

**MEMORANDUM DECISION**

Petitioner Father D.P.[1] appeals the Circuit Court of Wood County's December 30, 2022, order terminating his parental, custodial, and guardianship rights to J.M. and I.M.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

Twins J.M. and I.M. were born in October 2021. At the hospital, their mother tested positive for Suboxone, and the twins began experiencing withdrawal symptoms. The mother reported that petitioner was the father of the twins, but petitioner was not present for their birth and did not sign the birth certificates. Before the birth of J.M. and I.M., petitioner and the mother had two prior children together. Both petitioner and the mother's parental rights to the older children were involuntarily terminated—the most recent termination occurring in March 2021. Additionally, petitioner's parental rights to two other children were involuntarily terminated in other proceedings.

---

[1]Petitioner appears by counsel Eric K. Powell. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Katica Ribel. Counsel Wells H. Dillon appears as the children's guardian ad litem ("the guardian").

Additionally, pursuant to West Virginia Code § 5F-1-2, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated, effective January 1, 2024, and is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

Based on the foregoing, the DHS filed an amended[3] abuse and neglect petition in November 2021. After genetic testing confirmed petitioner was the father of J.M. and I.M., the DHS filed another amended petition in August 2022 alleging that petitioner had no contact with J.M. and I.M. in their lifetime and failed to provide the children with necessary food, clothing, shelter, supervision, and care. Further, the petition alleged that petitioner was, at the time, incarcerated and serving a sentence "on several misdemeanor charges dealing with possession of controlled substances and trespassing at placarded residence," as well as being held pre-trial on five pending shoplifting charges.[4]

The circuit court held an adjudicatory hearing in September 2022, where petitioner stipulated to the aggravated circumstance of his four prior terminations and that he had not had any contact with J.M. or I.M. and had "failed to support the children financially, educationally, or emotionally, demonstrating the settled purpose to forego his parental duties and responsibilities." Accordingly, the court adjudicated petitioner as an abusive and neglectful parent based on his stipulated conduct.

The court proceeded to disposition in November 2022. The court received evidence from a DHS worker that petitioner never contacted any member of the DHS to inquire about his children and never requested visitation or services. Both the DHS and the guardian recommended termination of petitioner's parental rights, arguing that termination was in the best interest of the children. Petitioner submitted evidence of his recent participation in drug court via his criminal case, having joined the program one month prior. In petitioner's testimony, he admitted that his substance abuse problems and incarceration kept him from meeting the children since their birth over a year ago, though he admitted to only being incarcerated for three months of that period. Petitioner further testified that he attended seven classes through drug court and was learning to better manage his addiction, adding that he would be willing to participate in classes and services offered during an improvement period.

Ultimately, the circuit court concluded that there was no reasonable likelihood that the conditions of neglect and abuse can be substantially corrected in the near future, and that termination of petitioner's rights to J.M. and I.M. was in the best interest of the children. Accordingly, the court terminated petitioner's parental, custodial, and guardianship rights to the children.[5] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). First, petitioner argues that the circuit court erred

---

[3]Based on the limited record, it appears that instead of filing a new petition, the DHS amended a petition involving the parents from a prior proceeding.

[4]Petitioner was incarcerated from August 2022 to October 2022, though petitioner was present and represented by counsel at the September 2022 adjudicatory hearing.

[5]The children were returned to their mother's custody after she successfully completed her improvement period.

2

by refusing to grant a post-adjudicatory improvement period. Petitioner correctly identifies that West Virginia Code § 49-4-610 requires a parent seeking a post-adjudicatory improvement period to demonstrate by clear and convincing evidence that the parent "is likely to fully participate in the improvement period" and argues that he met that burden. However, petitioner failed to cite to the entirety of the statute, which also requires a parent seeking a post-adjudicatory improvement period to file a written motion requesting the improvement period. W. Va. Code § 49-4-610(2)(A). The record contains no evidence that petitioner filed a written motion requesting a post-adjudicatory improvement period. *See* Syl. Pt. 4, *State ex rel. P.G.-1 v. Wilson*, 247 W. Va. 235, 878 S.E.2d 730 (2021) ("A circuit court may not grant a post-adjudicatory improvement period under W. Va. Code § 49-4-610(2) (eff. 2015) unless the [parent seeking the improvement period] files a written motion requesting the improvement period."). As such, petitioner's argument here is without merit, and we find no error.

Second, petitioner argues that the circuit court could have considered the less restrictive alternative of terminating only his custodial rights. However, we have previously held that termination of parental rights "may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604] that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). West Virginia Code § 49-4-604(d) provides that there is no reasonable likelihood that conditions of neglect or abuse can be corrected where the parent has "abandoned the child." Here, petitioner stipulated at adjudication to "demonstrating the settled purpose to forego his parental duties and responsibilities" to both children, and the evidence is clear that petitioner never met the children. Accordingly, petitioner admitted to abandoning the children. *See* W. Va. Code § 49-1-201. Based on this evidence, the record supports the circuit court's finding that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future.

Further, petitioner argues termination of his rights was not necessary for the welfare of the children because the children were placed with their mother and a decision to not terminate petitioner's rights would not have interfered with that placement. Additionally, petitioner argues he was given "disparate treatment" because the mother's rights were not also terminated. However, we have previously explained that

> simply because one parent has been found to be a fit and proper caretaker for his/her child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve.

*In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). As such, petitioner's argument does not entitle him to relief.

Finally, petitioner argues that the DHS made no effort to arrange any visitation between him and the children. However, the record shows that petitioner never met the children prior to the proceedings and never contacted the DHS to inquire about visitation once the proceedings were initiated. Further, petitioner fails to acknowledge that West Virginia Code § 49-4-604(c)(7)

3

provides that the DHS is not required to make reasonable efforts to preserve the family, such as arranging visitation, where the parent has abandoned the child and where the parent has previously had parental rights terminated involuntarily. Petitioner specifically stipulated at adjudication that he abandoned J.M. and I.M. and that his parental rights to four children were previously terminated. Petitioner's argument is without merit. The circuit court's finding that the best interest of the children required termination of petitioner's rights is well-supported by the record and provided the children with finality and permanency, and we find no error. *See* Syl. Pt. 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014) ("The controlling standard that governs any dispositional decision remains the best interests of the child.")

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 30, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: February 7, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn